UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALAN R. MURRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 1:21-cv-2077 |
| v. ) | |
| ) | |
| CENTERSTONE OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

### I. STATEMENT OF THE CASE

1. Plaintiff, Alan R. Murray (hereinafter "Murray" or "Plaintiff"), brings his Complaint against Defendant, Centerstone of America, (hereinafter "Centerstone"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*, and for violations of the Americans with Disabilities Act ("ADA") as amended, 42 U.S.C. § 12101 et seq., and the ADA Amendments Act of 2008 ("ADAAA"). Murray, a gay male, contends he was subjected to discrimination based on his sexual orientation/gender and disability, and retaliated against for opposing a discriminatory practice. Murray also contends that he was discouraged from seeking FMLA benefits while he was caring for his domestic partner who was seriously ill with a back injury.

### II. PARTIES

2. Murray is a citizen of Indiana. He resides within the geographical boundaries of the Southern District of Indiana.

3. Centerstone is a not-for-profit health system headquartered in Tennessee, providing mental health and substance use disorder treatments within the geographical boundaries of the Southern District of Indiana.

### III. JURISDICTION AND VENUE

4. Murray was an "employee" within the meaning of 42 U.S.C. § 2000e(f), and 29 U.S.C. § 2611(2).

5. Centerstone is an "employer" within the meaning of 42 U.S.C. § 2000e(b), and 29 U.S.C. § 2611(4).

6. Murray satisfied his obligation to exhaust his administrative remedies by having timely filed his U.S. Equal Employment Opportunity Commission Charge Number 470-2021-02190 against Centerstone alleging discrimination in violation of the Civil Rights Act of 1964, as amended, because of his sex, male, and disability pursuant to the ADA and ADAAA. Murray received his Notice of Right to Sue from the EEOC on May 27, 2021, and timely files his Complaint.

7. Jurisdiction is conferred on this Court by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq, and the ADA and ADAAA; 42 U.S.C. § 12117, and 28 U.S.C. § 1331, 29 U.S.C. § 2601 et seq.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as all events, transactions and occurrences concerning this matter have arisen in the geographical purview of the Southern District of Indiana.

## IV. FACTUAL ALLEGATIONS

9. Murray was hired by Centerstone on August 4, 2016 as a Therapist. Prior to that, Murray worked at Centerstone for approximately 18 months while he was completing his Master's Degree. His direct supervisor was Melissa Newland ("Newland").

10. For the last 2 years, Newland has treated Murray differently because of his sexual orientation, and has refused to provide accommodation for his disability, post-traumatic stress disorder and anxiety.

11. The harassment and stress continued in January of 2021, with Newland constantly pressuring Murray about his productivity, even though he was continually expressing to her that he could not reach his productivity numbers because of the way his schedule was being handled.

12. At that time, he was sleeping less than four hours each day, vomiting nearly daily, having daily panic attacks, and was so depressed he was having thoughts of death regularly.

13. Newland knew how badly Murray was struggling, but she never relented and did nothing to ensure that his schedule would be fixed. Her constant pressure contributed greatly to the mental and physical issues Murray was experiencing at that time.

14. In January 2021, Murray made an anonymous report to Centerstone CEO, David Guth, about the discriminatory treatment that he was receiving at Centerstone; however, he was afraid to identify himself for fear of retaliation.

15. Murray's partner underwent a back surgery in October of 2020. He developed complications after the surgery and was incapacitated. Murray was the primary caregiver for his partner. When Murray asked Newland about FMLA benefits, she surmised that he would not qualify because Murray and his partner were not legally married.

16. In February of 2021, Murray's partner's pain was so severe that he was having suicidal thoughts.

17. Newland is the supervisor of the Crisis team at Centerstone, and is aware of suicide issues.

18. Murray messaged Newland asking her for help. Though she was online, she ignored his message and did not reply until the next day, with a generic statement about hoping everything worked out.

19. On or about April 9, 2021, Murray told Newland that he was feeling harassed by these actions and by the constant pressure/lack of support. Newland's response was that, "you should be grateful we waited a year to do this to you."

20. On April 13, 2021, Murray was placed on corrective action.

21. On April 16, 2021, Murray advised Centerstone Human Resources that he was being harassed by Newland, and treated differently than other similarly situated employees who are not gay.

22. Murray explained to HR that Newland had prevented him from forming a support group for LGBT teens and young adults.

23. Murray also advised HR that Newland had made disparaging comments about the transgender community in the presence of Murray and others.

24. In April of 2021, Newland told Murray that someone reported a strong odor of marijuana coming from his office and he was placed on administrative leave. However, Newland later stated in a Zoom call after the allegation (which was also attended by Tracey Lickfelt and Adelaide Wetzel), that she had not smelled anything like that in Murray's office.

25. On or about May 3, 2021, Murray was terminated under the pretext of failing to pass a drug screen.

26. Murray contends that the stated reason for his termination was pretext, and that the real reason for his termination was because of his sexual orientation, and in retaliation for complaining about Newland.

27. Murray submits that there were other therapists working for Centerstone who were not terminated despite drinking alcohol on the job and having inappropriate sexual relationships with clients.

## V.   FIRST CLAIM FOR RELIEF
**(Damages Under the FMLA)**
**29 U.S.C. § 2617(a)**

28. Murray hereby incorporates paragraphs one (1) through (27) as set forth herein.

29. Murray is informed and believes, and on that basis alleges, that Centerstone qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4), and that Murray is an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2).

30. Murray is informed and believes, and on that basis alleges, that there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1), and that Murray was denied his entitlement to leave as prescribed in FMLA.

31. Murray was entitled to Family and Medical Leave Act leave because of a serious health condition of his own, as well as that of his domestic partner. 29 U.S.C.S. § 2612(a)(1)(D).

32. Murray is informed and believes, and on that basis alleges, that Centerstone is responsible under the FMLA, 29 U.S.C. § 2617(a).

33. As the result of his termination, Murray has incurred, and is now incurring, a loss of wages and continuing medical expenses, all within the meaning of the FMLA, 29 U.S.C. §

2617(a), in an amount to be proved at trial. These costs include, without limitation, lost wages and medical expenses, back pay from the effective date of termination, lost medical expenses from the date of termination, and lost employment benefits from the date of termination of benefits, the loss of front pay as of the date of this complaint, liquidated damages, attorneys' fees, and any interest on the amount thereon as provided in the FMLA, 29 U.S.C. § 2617.

## VI.  SECOND CLAIM FOR RELIEF
### (Damages Under Title VII)
### 42 U.S.C. § 2000e
### Employment Discrimination Based on Sex

34. Murray hereby incorporates paragraphs one (1) through (33) as set forth herein.

35. Centerstone's stated reason for terminating Murray was that it was reported that his office smelled of marijuana and he was subjected to a drug test, a fact which Murray denies.

36. Murray submits that this reason is pre-text, as one of his female co-workers was caught drinking alcohol at work and having sexual relations with a client, yet she was not terminated and was allowed to continue to work at a different facility.

37. Murray failed his drug test because he was using full spectrum CBD oil to treat his depression and anxiety that was being caused, in part, by the discriminatory treatment he was receiving from his supervisor, Newland.

38. As a result of Centerstone's actions, Murray has sustained damages including but not limited to economic loss, loss of reputation, loss of enjoyment of life, mental anguish and emotional injury.

39. Centerstone's actions and omissions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended.

40. Murray submits that he was discriminated against on the basis of his sex, gay male, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended.

### VII.   THIRD CLAIM FOR RELIEF
**(Damages Under Title VII)**
**42 U.S.C. § 2000e**
**Retaliation**

41. Murray hereby incorporates paragraphs one (1) through (40) as set forth herein.

42. Murray raised concerns regarding unfair treatment based on his sexual orientation, gay male.

43. Murray brought his concerns anonymously to the CEO in January 2021, and again to Human Resources in April of 2021.  Murray also told Newland and Tracey Lickfelt in a Zoom call on April 14, 2021 that he felt he was being discriminated based on his sexual orientation.

44. Murray informed HR that he was being discriminated against because of his sexuality.

45. Murray was terminated within weeks of bringing these issues to the attention of HR.

### VIII.   FOURTH CLAIM FOR RELIEF
**(Damages Under Title VII)**
**42 U.S.C. § 12101 *et seq.***
**Discrimination and Retaliation Based on Disability**

46. Murray hereby incorporates paragraphs one (1) through (45) as set forth herein.

47. Murray has mental/emotional conditions that are serious enough to substantially limit a major life activity, and has a record of disability.

48. Murray has been discriminated against because of his disability.

49. Centerstone refused to make a reasonable accommodation for Murray's disability.

50. Murray was terminated by Centerstone in retaliation for bringing issues regarding his disability and lack of reasonable accommodation to the attention of HR.

51. Centerstone's actions and omissions violated the ADA and ADAAA, 42 U.S.C. § 12101 *et seq*.

## IX.    REQUESTED RELIEF

WHEREFORE the Plaintiff, Alan R. Murray, requests that judgment of this Court be held in his favor as follows:

1. Order Defendant to pay Plaintiff any and all lost wages and the monetary value of all benefits associated with his employment as a result of Defendant's discrimination;

2. Order Defendant to pay Plaintiff compensatory damages for the mental anguish and consequential harm he suffered;

3. Order Defendant to pay Plaintiff's reasonable attorney fees and costs;

4. Order Defendant to pay interest on all sums recoverable; and

5. Award to Plaintiff all other relief that is just and proper.

Respectfully submitted,

GOODIN ABERNATHY, LLP

/s/ Christopher E. Clark
Christopher E. Clark, #18577-29
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff, Alan R. Murray, by counsel, demands a trial by jury on all issues deemed so triable.

Respectfully submitted,

GOODIN ABERNATHY, LLP

/s/ Christopher E. Clark
Christopher E. Clark, #18577-29
*Attorney for Plaintiff*

GOODIN ABERNATHY, LLP
301 East 38th Street
Indianapolis, IN 46205
Ph. (317) 843-2606
Fax (317) 574-3095
cclark@goodinabernathy.com
03-128